UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BYRON ROOT

     Applicant,

v.                                CASE NO. 8:13-cv-861-T-23AEP

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER

     Byron Root applies for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for second-degree murder, for which conviction Root serves life imprisonment.  Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc. 18)  The respondent admits the application's timeliness.  (Doc. 18 at 6)

## Facts[1]

     Norman Trace and Rogers Combs were having coffee on Trace's back porch when they heard a car pull up and stop near the woods behind Trace's house.  Combs and Trace both heard a man and a woman arguing.  Trace called 911.  While awaiting the police, Combs heard two "thumps" and some movement in the woods followed by the slamming of a car door.  A police officer entered the woods and

_____

[1] This factual summary derives form Root's brief on direct appeal and the record. (Respondent's Exhibits 1 and 2)

encountered Root, who advised that the victim needed help.  The officer put Root in his patrol car and proceeded into the woods where he found the deceased victim face down in the mud.  Root admitted to the police that he had struck the victim in the head with a jack handle and "choked her out."  Root was arrested and charged with second-degree murder with a weapon.  A jury convicted Root and he was sentenced to life imprisonment.

### Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Root's application.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the

state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693  (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (quoting *Woodall*, 572 U.S. at 419).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").  The phrase

- 3 -

"clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted). When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same

reasoning." *Wilson*, 138 S. Ct. at 1192.  "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Root's conviction and sentence.  (Respondent's Exhibit 2)  In another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Root's subsequent Rule 3.850 motion for post-conviction relief.  (Respondent's Exhibit 3C)  The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim

> on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Root bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state court's rejection of Root's post-conviction claims warrants deference in this case.  (Respondent's Exhibits 3B and 3C)

### Ineffective Assistance of Counsel

Root claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective

> assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not  functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Root must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Root must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91.  Root cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  The required extent of counsel's investigation was addressed in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or

- 8 -

> not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Root must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."" *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential

*Strickland* test — through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'"), *cert. denied*, 134 S. Ct. 191 (2013).

Because the state court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel, Root cannot meet the "contrary to" test in Section 2254(d)(1). Root instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

**Ground One[2]**

Root contends that his trial counsel rendered ineffective assistance by not moving to suppress Root's pre-*Miranda* statements to the police based on the officer's failure to give Root *Miranda* warnings. Citing *Missouri v. Seibert*, 542 U.S. 600 (2004), Root argues that "[a]ny statements that were given before Mr. Root was advised of his *Miranda* [r]ights were in violation of the right to remain silent" and are "fruits of

---

[2] Root presents four grounds for relief in the federal application. He designates each ground by the number assigned to the ground in his state Rule 3.850 motion for post-conviction relief — grounds six, seven, eight, and ten. For ease of reference, this order designates the grounds as "one, two, three, and four." The respondent in the corrected response (Doc. 18) also numbers the grounds as one through four.

the poisonous tree." (Doc. 2 at 5–6) Root claims that he raised this ground in the state court in his Rule 3.850 motion. The respondent argues that the ground is unexhausted and procedurally defaulted because it is substantively different from the ground presented to the state post-conviction court. (Doc. 18 at 9–10) In his Rule 3.850 motion Root argued that his trial counsel should have moved for suppression because Root's "emotional state of severe shock" caused the police to coerce Root to give incriminating statements. (Respondent's Exhibit 3A, Root's March 2010 original Rule 3.850 motion at 9–10) Root asserts in the federal application that counsel should have moved to suppress his statements because the police did not advise Root of his *Miranda* rights. Acknowledging the distinction between the factual bases for each of these grounds of ineffective assistance of counsel, Root argues in his reply that he "is not now raising a new claim but rather he is encompassing new theories of his original IAC claim." (Doc. 10 at 10)

Although an applicant need not present in his federal habeas application "a verbatim restatement of the claims brought in state court," he may not present a particular factual instance of ineffective assistance of counsel in a federal application that he did not first present to the state court. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005); *Johnson v. Singletary*, 162 F.3d 630, 634–35 (11th Cir. 1998). If an applicant raised an ineffective assistance of counsel claim in state court, but alleges different supporting facts in his federal application, he has failed to fairly present the federal claim to the state court. *See Weeks v. Jones*, 26 F.3d 1030, 1044–46 (11th Cir. 1994) (rejecting an applicant's argument that "the general claim of

ineffective assistance of counsel in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court").  Root's failure to present to the state court the allegations raised in ground one of the federal application — ineffective assistance of counsel for not moving to suppress his pre-*Miranda* statements based on *Seibert* — renders the ground unexhausted.

Before a federal court can grant habeas relief, an applicant must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1)(A), (C).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  To exhaust a claim, an applicant must present the state court with both the particular legal basis for relief and the facts supporting the claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual

contention that supports relief.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement that an applicant exhaust each available state court remedy as a prerequisite to federal review is satisfied if the applicant "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275 76 (1971).  An applicant may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'"  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

Root's failure to present to the state court the ground of ineffective assistance of counsel presented in ground one of the federal application deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Boerckel*, 526 U.S. at 845; *see also Anderson v. Harless*, 459 U.S. 4, 5 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made."); *Preston*, 785 F.3d at 460 (noting that "simply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state courts").  Consequently, ground one is unexhausted.  State procedural rules preclude Root from returning to state court to present this ground in a second Rule

3.850 motion.  Root's failure to properly exhaust this ground in the state courts results in a procedural default.

"If the [applicant] has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, an applicant "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, an applicant must demonstrate not only that an error at the trial created the possibility of prejudice, but that the error worked to his actual and substantial disadvantage and infected the entire trial with "error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).  In other words, an applicant must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, an applicant may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).  A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet the

- 14 -

"fundamental miscarriage of justice" exception, an applicant must show constitutional error coupled with "new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Root fails to demonstrate cause and prejudice excusing the default of ground one. *Carrier*, 477 U.S. at 495B96. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Root satisfies neither exception to procedural default, ground one is procedurally barred from federal review.

Alternatively, to the extent that Root seeks federal relief on the allegations of ineffective assistance of counsel that he exhausted in the state court in ground six of his Rule 3.850 motion — that counsel rendered ineffective assistance by not moving to suppress Root's pre-*Miranda* statements based on (1) Root's extreme emotional state and (2) alleged coercion by the police — Root cannot obtain relief. The state post-conviction court denied this ground in Root's Rule 3.850 motion (Respondent's Exhibit 3B, order denying in part and dismissing in part Root's Rule 3.850 motion at 13–14) (footnotes omitted):

> [T]he Defendant alleges that his trial counsel was ineffective for failing to suppress recorded statements on the basis that the Defendant "was in an emotional state of severe shock" and was misled by Deputy Foy to give false statements which led to his conviction being obtained by use of a coerced confession.
>
> In order to prevail on this claim, the Defendant must allege facts sufficient to show that his counsel had a valid basis for

filing a motion to suppress and that there is a reasonable probability the motion would have been granted. In the instant action, the Defendant has failed to establish a valid basis for filing a motion to suppress his statements to law enforcement and a review of the record reveals that, even if granted the opportunity to amend this ground, he would be unable to establish one. The mere fact that the Defendant was "very emotional" does not equate to his statements being unknowing and involuntary. Rather, the record conclusively refutes any claim that the Defendant's *Miranda* rights were not intelligently, knowingly, and voluntarily waived. On cross-examination, Deputy Foy even agreed that the Defendant was "anxious" to tell him what happened.

In light of the foregoing, the court finds the Defendant has failed to establish either that his counsel had a valid basis for filing a motion to suppress on the basis of his "emotional state of severe shock" or that there is a reasonable probability such a motion would have been granted. Thus, the Defendant's claims under this ground are without merit. Furthermore, it is well settled that "trial counsel cannot be deemed ineffective for failing to argue a non-meritorious motion to suppress." Therefore, the Defendant has failed to establish a valid ground for relief and this claim is denied.

The record shows that Root gave incriminating statements to Detective Foy only after he received a *Miranda* warning.  Deputy Foy testified on direct examination at trial about Root's statements (Respondent's Exhibit 1D, trial transcript at 315–17):

> Q: And did you encounter someone later known to you as Byron Root?
>
> A: Yes, I did.
>
> Q: How did you encounter him?
>
> A: He was in the back of Deputy Kiernan's car.
>
> Q: Did you speak to him?
>
> A: I did.
>
> . . . .

Q: Did you read him what are commonly known as the *Miranda* warnings?

A: I did.

Q: Could you read them in court the way you read them to Mr. Root?

A: Yes, sir. Basically we are issued a card by the office of the State Attorney —

. . . .

Q: I guess if you could just read the card.

A: Would you like me to read the entire *Miranda* warnings?

Q: The way you gave it to —

A: Okay. I give it somewhat differently than some officers do it. I read each right individually and have those rights either invoked or waived. The first right is you have the right to remain silent. Do you understand that right[?] And then I gain a response from the person that I'm giving them to.

Q: What did Mr. Root say to you?

A: He understood the right and waived it.

Q: What else did you say to him?

A: I said, right number two is anything you say can and will be used against you in a court of law, do you understand that right[?] And he understood it and waived it. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish, do you understand that right[?] He did, and waived it. You can decide at any time to exercise these rights and not answer any questions or make any statements, do you understand that right[?] He understood it and waived it. Do you understand each and every one of these rights as I've explained them to you, yes or no, requiring a verbal response. Having those rights in mind, do you wish to talk to me now, yes or no. Mr. Root advised me he would talk to me.

> Q: And did you actually speak to him, were you standing and he was sitting, or what was your positioning?
>
> A: He was seated in the car. I advised Mr. Root that he was under arrest and he was placed in handcuffs and put back into the car, seated in the rear of Deputy Kiernan's patrol vehicle.

Deputy Foy further testified on cross examination about Root's understanding of the *Miranda* warnings (Respondent's Exhibit 1D, trial transcript at 341):

> Q: Okay. Now, in terms of Mr. Root and the way he responded to you, you've told us that you read him his *Miranda* warnings, you told him he didn't — paraphrasing, but you told him he didn't have to talk to you, that he had the right not to, in fact, that he had a right to have an attorney consult with him before he did this, but Mr. Root told you, ["]I understand, but I want to tell you what happened.["] Is that right?
>
> A: I actually had to at one point — he interrupted my advisement of *Miranda* and told me he understood his rights. And I told him, time out, I have to finish these things, this is the way we do this, let me finish, and then if you want to talk to me, fine.
>
> Q: So he was anxious to tell you what had happened[?]
>
> A: Yes, sir, he was.

To obtain relief on an ineffective assistance of counsel claim for failing to file a motion to suppress, Root must prove that (1) counsel's representation fell below an objective standard of reasonableness, (2) he has a meritorious Fourth Amendment claim, and (3) a reasonable probability of a different verdict exists absent the excludable evidence. *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). As in his Rule 3.850 motion, Root does not demonstrate that a valid basis exists for suppression of his statements to Deputy Foy. Because Root fails to establish a meritorious Fourth

Amendment claim, he cannot sustain his ground of ineffective assistance of counsel for not filing a motion to suppress this evidence. *See Zakrzewski*, 455 F.3d at 1260. Root fails to establish either that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting this ground.[3]  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Two**

Root contends that his trial counsel rendered ineffective assistance by not properly investigating the victim's actual injuries "compared to the statements and depositions given in regards to the injuries." (Doc. 1 at 7)  Root argues that an investigation would have corroborated the theory of defense that the victim was attacking Root.  He further argues that trial counsel could have shown through the expert testimony of the medical examiner, Dr. Russell Vega, that Root and the victim were facing each other when the victim was injured, which testimony would have further supported the defense theory that the victim was the aggressor. Root asserts also that trial counsel could have used a surveillance video from a convenience store close to the crime scene to show that the victim had injuries before her altercation with Root.  Root claims that evidence of the victim's pre-existing injuries "would certainly create doubt in the minds of the jury." (Doc. 1 at 9)

---

[3] Root's argument of entitlement to relief under *Missouri v. Seibert*, 542 U.S. 600 (2004), likewise lacks merit.  *Seibert* examines an interrogation procedure in which a police officer consciously withholds the *Miranda* warning during a custodial interrogation until the interrogation produces a confession, then issues the *Miranda* warning and again obtains the confession. 542 U.S. at 604.  *Seibert* holds that the second, post-*Miranda* confession is inadmissible because the police deliberately delayed giving the *Miranda* warning in an attempt to elicit a confession.  Root cannot obtain relief under *Seibert* because he fails to establish that the police withheld the *Miranda* warning before the initial interview.

The state post-conviction court denied this ground in Root's Rule 3.850 motion (Respondent's Exhibit 3B, order denying in part and dismissing in part Root's Rule 3.850 motion at 14–15) (footnotes omitted) (emphasis in original):

> [T]he Defendant alleges that his trial counsel "was ineffective for failing to properly investigate the blunt trauma to the head of [the victim]." The Defendant maintains that he only struck the victim twice on the front of her head and alleges that further investigation by defense counsel would have revealed that the other two blunt trauma injuries to the back of the victim's head were pre-existing injuries. The Defendant also alleges that this information would somehow support his claim that the victim initially attacked him.
>
> This claim is . . . without merit. Notably, Dr. Vega testified that the two injuries to the back of the victim's skull were similar to the two injuries noted on the front of her skull. All four *oblong* injuries were consistent with the victim being struck with a metal rod. Moreover, the Court finds it highly unlikely and improbable that the victim was similarly injured twice on the back of the head by someone other than the Defendant prior to his interaction with her, and in a manner consistent with the injuries that the Defendant admitted causing by striking the victim twice on the front of the head with a jack handle.
>
> Based on the foregoing, the Court's confidence in the outcome of the trial is not undermined by the Defendant's claim that trial counsel was ineffective for failing to further investigate the victim's head wounds. Consequently, the Court will deny relief as to this claim.

Root fails to describe what evidence a further investigation would have produced that would have supported his theory of defense.  He presents no evidence to support his speculative contention that trial counsel could have elicited from Dr. Vega testimony that Root and the victim were facing each other when the victim's injuries occurred.  Furthermore, given Dr. Vega's testimony that the injuries to the

back of the victim's head were visible only after her hair was shaved,[4] Root fails

to show a reasonable probability that the outcome of the trial would have been

different if counsel had introduced the surveillance video from the convenience store.

Root fails to establish either that the state court unreasonably applied *Strickland* or

unreasonably determined the facts by rejecting this ground.  28 U.S.C. § 2254(d)(1),

(d)(2).

**Ground Three**

Root contends that his trial counsel rendered ineffective assistance by not

preparing a "meaningful" defense.  Root argues that his trial counsel relied on

---

[4] Dr. Vega testified on direct examination at trial (Respondent's Exhibit 1E at 459–61):

Q: Doctor, did you examine the back of [the victim]'s head?

A: I did.

Q: What were those measures?

A: The hair was fairly thick in that area and to accurately examine and then photo document the injuries the scalp had to be shaved in the area of those injuries to be able to do that.

Q: Did she have long hair or short hair, thick hair?

A: Moderately long and fairly thick.

. . . .

Q: Now, the injuries you noted to the back of her skull, were those similar or different from the type of injuries you noted from the front of her skull[?]

A: They were similar.

. . . .

Q: In terms of causation for those two wounds, in other words the wounds to the back of her skull, are those also consistent with being struck with a metal rod?

A: Yes.

hearsay to support the defense and could not articulate a specific trial strategy to the trial judge.

After permitting Root to amend this ground, the state post-conviction court denied the ground as follows (Respondent's Exhibit 3C, final order denying motion for post-conviction relief at 3–4) (footnotes omitted) (emphasis in original):

> In his present amendment the Defendant alleges that his trial counsel was ineffective for failing to prepare a meaningful defense. The Defendant further alleges that defense counsel Franklin Roberts "failed to investigate and ascertain pertinent testimony and evidence that was readily available . . . in the form of investigative, arrest, autopsy reports, and depositions." The Defendant complains that defense counsel "failed to impeach Dr. Vega with prior inconsistent statements" and thereby "failed to uphold the self-defense theory." . . . . In sum, the Defendant complains that his trial counsel "failed to develop a coherent theory of defense."
>
> Despite the opportunity to amend, the Defendant's claims . . . still fail to propose a viable, much less compelling, defense that trial counsel could have presented to the jury in this case. Notably, much of what the Defendant alleges in support of [this ground] was already determined to have been refuted by the record in this Court's previous Order rendered April 8, 2011. For example, under Ground Five of this Court's April 8, 2011, Order, the Court specifically found that Dr. Vega's trial testimony was *not* contradicted by either the autopsy report or his prior deposition testimony. . . .
>
> In light of the overwhelming evidence of the Defendant's guilt in this case, including but not limited to his own *admission* that he "choked [the victim] out" and placed vegetation over her body (indicating a guilty conscience inconsistent with a self-defense theory), the Court's confidence in the outcome of this proceeding is not undermined in any way by the Defendant's amended allegations. Having failed to establish prejudice, the Defendant's claim . . . will be denied.

Root presents no evidence showing that his trial counsel either failed to investigate the case or failed to develop a meaningful defense.  Consequently,

because he demonstrates neither deficient performance nor resulting prejudice, Root fails to satisfy *Strickland's* requirements to support a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 691–92. The state post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts by rejecting this ground. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Four**

Root contends that his trial counsel rendered ineffective assistance by not objecting to certain of the prosecutor's statements in closing argument. Specifically, Root claims that "[t]he prosecutor told the jury to convict [Root] because (1) 'The case is clear and there is no greater example of second degree murder,' . . . (2) 'I can't imagine a better example of an indifference to human life than that," . . . (3) "This is the perfect example of murder in the first degree with a weapon," . . . [and] (4) "Find him guilty because he deserves it.'" (Doc. 10 at 16) Root further argues that trial counsel rendered ineffective assistance by not objecting and moving for a mistrial because "the prosecutor's closing arguments shifted the burden onto the defense." (Doc. 1 at 12)

The state post-conviction court denied this ground in Root's Rule 3.850 motion (Respondent's Exhibit 3B, order denying in part and dismissing in part Root's Rule 3.850 motion at 17–18) (footnotes omitted):

> [T]he Defendant alleges that his trial counsel was ineffective for failing to object to the prosecutor's numerous improper arguments during closing argument. In support of this claim, the Defendant alleges that the prosecutor "repeatedly gave his personal opinion that Mr. Root was guilty," and "the case was

'clear' and that there was no greater example of second degree murder."

> Wide latitude is afforded to counsel in closing arguments. Counsel's role in closing argument is to assist the jury in analyzing the evidence. To that end, the prosecutor may state his contentions as to the conclusions the jury should draw from the evidence but may not express his personal opinion as to the merits of the case or as to the credibility of the witnesses. Although the Defendant is correct in pointing out that improper argument by a prosecutor without objection is a proper subject for a Rule 3.850 motion, the Defendant has failed to demonstrate that any objection was called for in this case. Most of the snippets of argument relied on by the Defendant under this ground fall short of offending the prohibitions against expressing personal opinion. Moreover, upon review of the closing arguments in their entirety, the court finds that the remaining complained of comment — "I can't imagine a better example of an indifference to human life than that. I can't." — was not so pervasive as to undermine confidence in the outcome of this case. Thus, the Defendant has not satisfied the necessary *Strickland* prejudice prong. A defense counsel's failure to object to improper closing arguments by the State is not ineffective without prejudice. This claim is, therefore, denied.

Closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). While he may not go beyond the evidence presented to the jury, the prosecutor is not limited to a bare recitation of the facts.  The prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence.  *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984).  In Florida, while "wide latitude is permitted in arguing to a jury," *Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982), such latitude does not extend to permitting improper argument.  *Gore v. State*, 719 So. 2d 1197, 1200 (Fla. 1998).

To prove prosecutorial misconduct Root must show that the challenged conduct was both improper and prejudiced his substantial rights. *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." *United States v. Hunte*, 559 F. App'x 825, 833 (11th Cir. 2014) (citing *Johnson v. United States*, 520 U.S. 461, 469–70 (1997)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). *Darden*, 477 U.S. at 181, teaches:

> The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, [643] . . . (1974). Moreover, the appropriate standard of review in a petition for the writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642 . . . .

*Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (*en banc*) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."), *cert. denied*, 480 U.S. 911 (1987); *United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed

in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

Taken in the context of the entire trial, the prosecutor's comments, even if improper, neither rendered the trial fundamentally unfair nor infected the trial with such unfairness that the resulting conviction amounts to a denial of due process. *See Tucker v. Kemp*, 802 F.2d at 1296.   Root fails to show that, if counsel had objected to the challenged remarks in the prosecutor's closing argument, the jury would have acquitted him.   Consequently, Root fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts by rejecting this ground.[5]   28 U.S.C. § 2254(d)(1), (d)(2).

Accordingly, Root's application for the writ of habeas corpus (Doc. 1) is **DENIED**.   The clerk must enter a judgment against Root and close this case.

---

[5] In his memorandum of law in support of each ground for relief Root states that "[e]ven if the individual allegations (instances) of ineffective assistance of counsel, when considered individually do not provide adequate prejudice or harm to require the sought relief, the synergy of the allegations when considered cumulatively does clearly reach and exceed the requisite harm demanding relief." (Doc. 2 at 8, 10, 12, 15) To the extent that Root asserts a cumulative error claim as an independent basis for relief, he cannot obtain relief.

"Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985). *See also Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [petitioner] received a fair trial as is [his] due under our Constitution."). Because each of Root's claims of ineffective assistance of counsel lacks merit, no cumulative prejudicial effect results. *See Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of [counsel's] cumulative errors does not warrant habeas relief."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL IN FORMA PAUPERIS

Root is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Root must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Root is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Root must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on January 11, 2021.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 27 -